EDGCOMB LAW GROUP, LLP
TIFFANY R. HEDGPETH (SBN 175134)
thedgpeth@edgcomb-law.com
NANCY M. WILMS (SBN 111837)
nwilms@edgcomb-law.com
KIANA AMIRI-DAVANI (SBN 316672)
kamiridavani@edgcomb-law.com
333 N. Glenoaks, Suite 610
Burbank, CA 91502-1144
Telephone: (818) 861-7618
Facsimile: (818) 861-7616

Counsel for Plaintiffs,
Trustees of the Cannon Family Trust and
Modaffari Family Trusts

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN H. CANNON, TRUSTEE OF THE CANNON FAMILY TRUST, AND MARGARET MARY MAXIM, NANCY ANN MODAFFARI, PETER JUDE MODAFFARI, AND MARK CHRISTOPHER MODAFFARI, TRUSTEES OF THE MODAFFARI FAMILY TRUST DATED MAY 6, 1999, TRUST "A" AND THE MODAFFARI FAMILY TRUST DATED MAY 6, 1999, TRUST "B"<br><br>          Plaintiffs,<br>   v.<br><br>Midway City Sanitary District; City of Garden Grove and DOES 1-20, inclusive<br><br>          Defendants. | Case No.: 8:21-CV-1072<br><br>**COMPLAINT FOR:**<br><br>1. **COST RECOVERY UNDER THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT, 42 U.S.C. § 9607(a);**<br>2. **CONTRIBUTION UNDER THE HAZARDOUS SUBSTANCE ACCOUNT ACT, CALIFORNIA HEALTH & SAFEY CODE § 25363(d)**<br>3. **DANGEROUS CONDITION OF PUBLIC PROPERTY**<br>4. **DECLARATORY RELIEF**<br><br>Complaint filed:   June 17, 2021 |

Plaintiffs Jonathan H. Cannon, as trustee of The Cannon Family Trust, and Margaret Mary Maxim, Nancy Ann Modaffari, Peter Jude Modaffari, and Mark Christopher Modaffari, as trustees of The Modaffari Family Trusts[1] (collectively, "Plaintiffs") allege the following against Midway City Sanitary District ("Midway"), the City of Garden Grove ("Garden Grove"), and Does 1-10 (collectively, "Defendants"):

## JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiffs' federal claims asserted herein pursuant to 28 U.S.C. § 1331, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") § 107(a), 42 U.S.C. §§ 9607(a).

2. This Court has supplemental jurisdiction over Plaintiffs' state-law claims asserted herein pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in the Central District of California because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendants are subject to personal jurisdiction in this District.

## PARTIES

4. Plaintiff Jonathan H. Cannon is an individual residing in the County of Orange and is a trustee of the Cannon Family Trust, which trust was formed under the laws of California.

---

[1] The Modaffari Family Trusts are comprised of the Modaffari Family Trust dated May 6, 1999, Trust "A" and Modaffari Family Trust dated May 6, 1999, Trust "B."

5. Plaintiff Margaret Mary Maxim is an individual residing in the County of Orange, California and is a trustee of the Modaffari Family Trusts, which trusts were formed under the laws of California.

6. Plaintiff Nancy Ann Modaffari is an individual residing in the County of San Diego, California and is a trustee of the Modaffari Family Trusts, which trusts were formed under the laws of California.

7. Plaintiff Peter Jude Modaffari is an individual residing in the County of Orange, California and is a trustee of the Modaffari Family Trusts, which trusts were formed under the laws of California.

8. Plaintiff Mark Christopher Modaffari is an individual residing in the County of Orange, California and is a trustee of the Modaffari Family Trusts, which trusts were formed under the laws of California.

9. Defendant Midway is a sanitary district formed under the laws of California.

10. Defendant Garden Grove is an incorporated city formed under the laws of California.

11. Plaintiffs do not know the true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants Does 1 through 10, inclusive, and therefore sues said Defendants under fictitious names. Plaintiffs will amend this Complaint to show their true names and capacities when and if the same has been ascertained.

## GENERAL ALLEGATIONS

12. Plaintiffs are owners of College Park East Center shopping center ("Shopping Center"), an "L-shaped" property developed in 1971 as a multi-tenant

commercial building located at the southwest corner of Lampson Avenue and Manley Street in Garden Grove, CA. The Cannon Family Trust and Modaffari Family Trusts or their predecessors (collectively, the "Trusts") acquired the Shopping Center in 1992.

13. Adjacent to the southern portion of the Shopping Center, along the Shopping Center's east side, runs Manley Street, a public street owned by the Garden Grove.

14. In 1987-1989, ARCO, which formerly operated a gasoline service station at the corner of Manley Street and Lampson Avenue, removed its underground storage tanks. As part of its tank removal activities, ARCO detected a release of gasoline and other constituents, which caused it to install groundwater monitoring wells on the ARCO lot, at the Shopping Center, and in Manley Street. ARCO performed this work under the oversight of the Orange County Health Care Agency ("OCHCA"). During ARCO's investigation in March and April 1989, at Monitoring Well No. 14 (MW-14) it identified perchloroethylene ("PCE") in groundwater underlying Manley Street at concentrations up to 48,000 µg/L and 63,000 µg/L, respectively. PCE is a chlorinated hydrocarbon and is listed as a hazardous substance under both federal and state regulations.

15. A sewer line runs through Manley Street. At the time the PCE release was discovered in the groundwater underlying Manley Street, and prior to the Trusts acquisition of the Shopping Center, Clown Cleaners, a dry cleaner that utilized PCE, operated at the western portion of the Shopping Center. The suite occupied by the dry cleaner tied into the sewer that runs through Manley Street via a lateral line at the Shopping Center. Dry cleaning operations had begun at the

Shopping Center in the early 1970s.

16. The OCHCA was the agency initially charged with investigating the cause of the PCE contamination detected in Manley Street.

17. As part of its investigation, OCHCA contacted Midway, which was the owner and operator of the sewer line that runs through Manley Street. Midway sent a crew to inspect the sewer line. Midway indicated to OCHCA that the sewer line was fine and had there been a leak in the sewer line, there would have been sand or dirt present in the line.

18. Following the discovery of the PCE contamination, the California Regional Water Quality Control Board, Santa Ana Region ("Regional Board"), assumed oversight responsibility with respect to the Shopping Center and Manley Street PCE detections.

19. In or about 1990, the Regional Board requested that the then-property owner, Dick Liska (who acquired the Shopping Center before ARCO's test results identifying PCE were made available) investigate whether there had been a historical release at the dry cleaner located on the western portion of the Shopping Center and, if so, if it was related to the Manley Street groundwater contamination. The investigation showed a localized release had occurred at the dry cleaner suite but that the Manley Street groundwater contamination, which was hydraulically upgradient of the dry cleaner suite and on the opposite side of the Shopping Center, was not related.

20. Following the investigation, the Regional Board issued a letter to Dick Liska, stating:

> "Based on the findings of [Dick Liska's] investigations, as well as earlier investigations, it appears that the chlorinated hydrocarbon contamination detected beneath the site and surrounding area may be derived from an off-site source.
>
> Therefore, no further groundwater investigation or cleanup of the chlorinated hydrocarbon contamination is required for this site at this time."

21. Dick Liska sold the Shopping Center to the Trusts, with escrow closing in January 1992. Prior to selling the Shopping Center, Dick Liska terminated Clown Cleaners' tenancy at the Shopping Center. After the Trusts acquired the Shopping Center, the Trusts leased the dry cleaner suite to a new dry cleaner that operated a closed-loop dry cleaning system and closed-off the drain to prevent discharges into the sewer.

22. Many years later, on April 20, 2017, the Regional Board requested Plaintiffs enter into the Regional Board's Voluntary Cleanup Program ("VCP"). Plaintiffs agreed and performed, among other things, soil, soil vapor, and groundwater investigations to determine the location of the source of PCE in the groundwater in Manley Street. The investigations concluded that a release of PCE occurred somewhere within the footprint of Manley Street. However, the investigation failed to identify the specific area or cause of the detected contamination.

23. On July 11, 2019, Plaintiffs informed the Regional Board that they were withdrawing from the Voluntary Cleanup Program with respect to Manley Street as they neither own nor operate Manley Street, nor did they discharge PCE impacting Manley Street. The Manley Street contamination occurred years before the Trusts acquired the Shopping Center.

24. In October 2020, the Regional Board issued to Plaintiffs and Dick Liska's son, Richard Liska, Investigative Order # R8-2020-0047, with a corrected copy on November 2, 2020, purportedly pursuant to Water Code § 13267 ("Order").

25. The Order requires Plaintiffs and Richard Liska to, among other things: "(1) define the magnitude of the VOC contamination in soil, soil gas, and groundwater at Manley Street; and (2) select and implement an appropriate remedy for the protection of water quality and human health from the contamination beneath Manley Street."

26. The Order also requires Plaintiffs and Mr. Liska to evaluate the potential of vapor intrusion into nearby buildings from the release in Manley Street, including residential homes.

27. Plaintiffs appealed the Order to the State Water Resources Control Board, which failed to act on the petition for appeal, and then filed a Petition for Writ of Administrative Mandamus in the Superior Court of California, County of Orange. Plaintiffs' petition is pending.

28. Certain deadlines set forth in the Order have been extended by the Regional Board. However, Plaintiffs are continuing to perform some of the ordered investigative work. On May 17, 2021, Plaintiffs performed additional sampling along the sewer line in Manley Street. This sampling effort identified, for the first time, elevated levels of PCE at approximately 18,000 ppb in soils underlying the sewer line in Manley Street. The sampling indicates the source of the contaminated groundwater in Manley Street was Midway's sewer.

29. A copy of a diagram identifying the Shopping Center, former location

of Clown Cleaners, former ARCO lot, Manley Street, MW-14, and the location of the sewer leak, is attached hereto as Exhibit A.

30. On information and belief, Midway constructed, operated, and maintained the leaking sewer line. On information and belief, Midway failed to perform adequate maintenance on its sewer line, and failed to perform a proper or sufficient inspection of its sewer line when requested to do so by the OCHCA and/or intentionally concealed its sewer leak from the OCHCA. Midway also may have used faulty materials in constructing the sewer line.

31. Alternatively, on information and belief, the release of PCE into Manley Street from the sewer line was a result of a sudden and accidental event.

32. On information and belief, Midway historically knew and permitted dry cleaners, including Clown Cleaners, to discharge PCE into Midway's sewer.

33. Levels of PCE detected in groundwater underlying Manley Street exceed the State of California's Maximum Contaminant Level for drinking water of 5 ug/L by orders of magnitude.

34. Investigations have shown that groundwater and soil vapor from the sewer release of PCE in Manley Street is migrating toward, beneath, and onto the Shopping Center. The release of PCE from the sewer in Manley Street poses a risk of vapor intrusion into structures surrounding the release point and near or overlying the contaminated groundwater. Additionally, the groundwater plume is traveling toward the separate PCE plume located on the western portion of the Shopping Center and will interfere with the remediation of that plume.

35. On January 15, 2021, Plaintiffs submitted a demand letter and a timely claim to Garden Grove and Midway, requesting reimbursement for damages

and that Midway and Garden Grove accept responsibility for the contamination found in Manley Street.

36. Midway (wrongly) responded that the claim form was insufficient and subject to denial if not amended. However, Midway never formally denied the claim.

37. By letter dated February 25, 2021, Garden Grove denied the claim.

38. As the former owner and operator of the sewer line in Manley Street at the time the release occurred, Midway had and has a duty to ensure its former sewer operations were not and are not harming the public, including properties adjacent to the sewer line, and persons residing, working, or visiting such properties.

39. As the owner and operator of Manley Street, and as the current owner and operator of the Manley Street sewer line, Garden Grove has a duty to ensure contamination at or emanating from its property is not harming the public, including adjacent properties, and persons residing, working, or visiting such properties.

40. On information and belief, neither Midway nor Garden Grove has taken any action to investigate or remediate the contamination at or emanating from the sewer line and Manley Street.

41. Plaintiffs have incurred substantial damages as a result of the contamination in Manley Street, including costs of investigation, costs to identify responsible parties, attorneys fees in connection with Regional Board requests and other requirements, costs to defend itself against the Regional Board actions, inability to obtain environmental insurance for the Shopping Center, and

TRUSTEES OF CANNON FAMILY TRUST AND MODAFFARI FAMILY TRUST COMPLAINT
8

diminution in property value.

# FIRST CLAIM FOR RELIEF
## (CERCLA Joint And Several Cost Recovery UNDER 42 U.S.C. § 9607(a))
### Against All Defendants

42. Plaintiffs incorporate by reference, as if fully set forth herein, Paragraphs 1-41 of this Complaint.

43. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), imposes liability on, among others, "the owner and operator of a vessel or a facility," "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of," "any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances . . . from which there is a release, or a threatened release which causes the incurrence of response costs of a hazardous substance . . . .," and "any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities… from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance…." Such persons are liable for, inter alia, "any other necessary costs of response incurred by any other person consistent with the national contingency plan."

44. Plaintiffs are each a "person" within the meaning of CERCLA §§ 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a).

45. Garden Grove is a "person" within the meaning of CERCLA §§ 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a).

46. Midway is a "person" within the meaning of CERCLA §§ 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a).

47. Does 1-10 are "persons" within the meaning of CERCLA §§ 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a).

48. Manley Street is a "facility" for purposes of CERCLA §§ 101(9) and 107(a), 42 U.S.C. §§ 9601(9), 9607(a).

49. The sewer line (a pipe) that runs through Manley Street is a "facility" for purposes of CERCLA §§ 101(9) and 107(a), 42 U.S.C. §§ 9601(9), 9607(a).

50. Garden Grove is the owner and operator of Manley Street and the sewer line within the meaning of CERCLA §§ 101(20)(A) and 107(a), 42 U.S.C. §§ 9601(20)(A) and 9607(a).

51. Garden Grove was the owner and operator of Manley Street at the time PCE was disposed of into Manley Street within the meaning of CERCLA §§ 101(20)(A) and 107(a), 42 U.S.C. §§ 9601(20)(A) and 9607(a).

52. Midway was the former owner and operator of the sewer line at the time PCE was released from the sewer line into Manley Street within the meaning of CERCLA §§ 101(20)(A) and 107(a), 42 U.S.C. §§ 9601(20)(A) and 9607(a).

53. Does 1-10 are persons liable under CERCLA § 107(a), 42 U.S.C. § 9607(a).

54. As a result of the release and threatened release of hazardous

TRUSTEES OF CANNON FAMILY TRUST AND MODAFFARI FAMILY TRUST COMPLAINT
10

substances at or from the sewer line and Manley Street, Plaintiffs have incurred costs of response as the term is defined by § 101(25) of CERCLA, 42 U.S.C. § 9601(25), and used in CERCLA § 107(a), 42 U.S.C. § 9607(a).

55. The costs of response incurred by Plaintiffs in connection with the Site have been necessary and incurred in a manner consistent with the National Contingency Plan, 40 C.F.R. Part 300.

56. Pursuant to CERCLA §107(a), 42 U.S.C. § 9607(a), Garden Grove, Midway, and Does 1-10 are each strictly, jointly and severally liable for the past and future costs of response incurred and to be incurred by Plaintiffs in response to the release or threatened release of hazardous substances at and from the sewer line and Manley Street.

## SECOND CLAIM FOR RELIEF
## (Hazardous Substance Account Act)
## Against All Defendants

57. Plaintiffs incorporate by reference, as if fully set forth herein, Paragraphs 1-56 of this Complaint.

58. California Health & Safety Code § 25363(d), which is part of the Carpenter-Presley-Tanner Hazardous Substance Account Act ("HSAA"), California Health & Safety Code §§ 25300 et seq., provides that parties who have incurred or have been held liable for removal or remedial action costs in accordance with the HSAA may seek contribution or indemnity for those costs from any person who is a "responsible party" or "liable person" under the HSAA.

59. A "responsible party" or "liable person" is defined in section 25323.5(a)(1) of the HSAA as "those persons described in section 107(a) of CERCLA, 42, U.S.C. 9607(a)." Section 107(a) of CERCLA, 42 U.S.C. § 9607(a),

imposes liability on, among others, "the owner and operator of a vessel or a facility," "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of," "any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances . . . from which there is a release, or a threatened release which causes the incurrence of response costs of a hazardous substance . . . ," and "any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities… from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance…."

60. Midway was the former owner and operator of the sewer line at the time PCE was released from the sewer line into Manley Street, thus it is a liable person under section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

61. Garden Grove is the current owner and operator of Manley Street; was the owner and operator of Manley Street when the sewer line released hazardous substances into Manley Street, and is the current owner and operator of the sewer line, thus, it is a liable person under section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

62. Midway and Garden Grove are each, accordingly, a "responsible party" and "liable person" pursuant to California Health & Safety Code § 25323.5 because they are each a liable person described in CERCLA § 107(a), 42 U.S.C. § 9607(a).

63. Does 1-10 are responsible parties and liable persons pursuant to California Health & Safety Code § 25323.5 because they are liable persons

described in CERCLA § 107(a), 42 U.S.C. § 9607(a).

64. Manley Street is a "site" pursuant to California Health & Safety Code § 25323.9 because it is a "facility" pursuant to CERCLA § 101(9), 42 U.S.C. § 9601(9).

65. The sewer line within Manley Street is a "site" pursuant to California Health & Safety Code § 25323.9 because it is a "facility" pursuant to CERCLA § 101(9), 42 U.S.C. § 9601(9).

66. As a result of the release and threatened release of hazardous substances at or emanating from the sewer line and Manley Street, Plaintiffs have incurred costs of response which were necessary and incurred in a manner consistent with the National Contingency Plan, 40 C.F.R. Part 300, and may continue to incur response costs.

67. Pursuant to the HSAA, Garden Grove, Midway and Does 1-10 are liable for the past and future costs of response incurred and to be incurred by Plaintiffs in response to the release or threatened release of hazardous substances at or emanating from the sewer line and Manley Street.

68. Pursuant to California Health & Safety Code § 25363(d), Plaintiffs are entitled to indemnification and contribution from Garden Grove, Midway, and Does 1-10 for all past and future response costs incurred by Plaintiffs as a result of the releases of hazardous substances at or emanating from the sewer line and Manley Street.

### THIRD CLAIM FOR RELIEF
### (Dangerous Condition – California Government Code § 835)
### Against Midway

69. Plaintiffs incorporate by reference, as if fully set forth herein, Paragraphs 1-68 of this Complaint.

70. Midway was the owner and operator of the sewer line in Manley

Street at the time PCE was released from the sewer line into Manley Street.

71. Midway was responsible for the construction, maintenance, inspection repair, and operation of the sewer line.

72. In 1989, after being told by OCHCA that a sewer leak in Manley Street was suspected, Midway examined the sewer line and represented to the OCHCA that the sewer line was not leaking. Midway failed to perform a reasonable inspection of its sewer line and therefore failed to identify its sewer as having leaked PCE into Manley Street. Alternatively, Midway identified the leak, but concealed the leak from OCHCA.

73. Midway also failed to construct, maintain and/or operate its sewer in a reasonable manner to prevent the release of sewer contents, including PCE.

74. Midway was aware or should have been aware of its sewer as the source of PCE in Manley Street as far back as 1989. On January 15, 2021, Plaintiffs submitted a claim and demand letter to Midway, informing Midway that the Regional Board believed its sewer was responsible for the release of PCE in Manley Street. Midway failed to accept the claim and has refused to take any action to abate or otherwise address the PCE that was released from its former sewer line.

75. Hazardous substances, including PCE, have been detected within Manley Street. Such hazardous substances are impacting groundwater, migrating onto and beneath the Shopping Center via groundwater and soil vapor transportation, and pose a risk of vapor intrusion into nearby structures.

76. Each day, hazardous substances that were released from the sewer line are continuously migrating from Manley Street toward Plaintiff's Shopping Center

and the community at large, causing new and greater injury.

77. As a result of Midway's failure to address the dangerous condition caused by its former ownership and operation of the sewer, Plaintiffs have been and will continue to be injured in that the hazardous substances emanating from Manley Street are contaminating the Shopping Center's soil, soil vapor, and groundwater, causing damages including, but not limited to, costs of investigation, remediation, and mitigation. Moreover, Plaintiffs have been ordered by the Regional Board to investigate the extent of the Manley Street contamination, including evaluating various environmental media in the nearby community.

## FOURTH CLAIM FOR RELIEF
## (Dangerous Condition – California Government Code § 835)
## Against Garden Grove

78. Plaintiffs incorporate by reference, as if fully set forth herein, Paragraphs 1-77 of this Complaint.

79. Garden Grove is the owner and operator of Manley Street.

80. Hazardous substances, including PCE, have been detected within Manley Street. Such hazardous substances are impacting groundwater, migrating onto and beneath the Shopping Center via groundwater and soil vapor transportation, and pose a risk of vapor intrusion into nearby structures.

81. On January 15, 2021, Plaintiffs submitted a demand letter and claim to Garden Grove, requesting reimbursement for damages and that Garden Grove accept responsibility for the contamination found in Manley Street. By letter dated, February 25, 2021, Garden Grove rejected the demand and denied the claim.

82. Garden Grove has known of the contamination in Manley Street since

at least January 15, 2021, yet has taken no action to abate or otherwise address the hazardous substances at and emanating from its property. Each day, hazardous substances are continuously migrating from Manley Street and impacting Plaintiffs Shopping Center as well as the community at large, causing new and greater injury.

83. As a result of Garden Grove's failure to address the dangerous condition on its property, Plaintiffs have been and will continue to be injured in that the hazardous substances emanating from Manley Street are contaminating the Shopping Center's soil, soil vapor, and groundwater, causing damages including, but not limited to, costs of investigation, remediation, and mitigation. Moreover, Plaintiffs have been ordered by the Regional Board to investigate the extent of the Manley Street contamination, including evaluating various environmental media in the nearby community.

## FIFTH CLAIM FOR RELEIF
## (Declaratory Relief Under Federal Law)
## Against All Defendants

84. Plaintiffs incorporate by reference, as if fully set forth herein, Paragraphs 1-83 of this Complaint.

85. An actual, substantial, and justiciable controversy exists between Plaintiffs and Defendants. Plaintiffs contend that Defendants are responsible for addressing the contamination at and emanating from the sewer line and Manley Street and, on information and belief, Defendants dispute this.

86. Pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiffs desire and are entitled to a declaration of the parties' respective rights and duties, including a

declaration that Defendants are responsible for investigating, remediating, and mitigating the contamination at and emanating from the sewer line and Manley Street. No adequate or speedy remedy exists for Plaintiffs in the absence of such a judicial declaration. Accordingly, Plaintiffs request a declaration from the Court setting forth Defendants' liability for all costs and/or damages resulting from the sewer line release and Manley Street contamination.

87. A declaratory judgment is proper because it will obviate the need for multiple suits and provide a complete determination of the rights and obligations of the parties.

## SIXTH CLAIM FOR RELIEF
### (Declaratory Relief Under California Law)
### Against All Defendants

88. Plaintiffs incorporate by reference, as if fully set forth herein, Paragraphs 1-87 of this Complaint.

89. An actual, substantial, and justiciable controversy exists between Plaintiffs and Defendants. Plaintiffs contend that Defendants are responsible for addressing the contamination at and emanating from the sewer line and Manley Street and, on information and belief, Defendants dispute this.

90. Pursuant to California Code of Civil Procedure § 1060, Plaintiffs desire and are entitled to a declaration of the parties' respective rights and duties pursuant to the above-described claims, including a declaration that Defendants are responsible for investigating, remediating, and mitigating the contamination at and emanating from the sewer line and Manley Street. No adequate or speedy remedy exists for Plaintiffs in the absence of such a judicial declaration. Accordingly,

Plaintiffs request a declaration from the Court setting forth Defendants' liability for all costs and/or damages resulting from the sewer line release and Manley Street contamination.

91. A declaratory judgment is proper in that it will obviate the need for multiple suits and provide a complete determination of the rights and obligations of the parties.

## SEVENTH CLAIM FOR RELIEF
## (Declaratory Relief Under CERCLA)
## Against All Defendants

92. Plaintiffs incorporate by reference, as if fully set forth herein, Paragraphs 1-91 of this Complaint.

93. There is a present and actual controversy between Plaintiffs and Defendants concerning their respective rights and obligations with respect to costs of response incurred in connection with the contamination at and emanating from the sewer line and Manley Street.

94. Pursuant to § 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and 28 U.S.C. §§ 2201 and 2202, Plaintiffs request a declaration holding Defendants liable for all costs and/or damages resulting from the sewer line release and Manley Street contamination.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment and relief as follows:

1. On the First Claim for Relief, for cost recovery under CERCLA §§ 107(a), 42 U.S.C. §§ 9607(a), according to proof;

2. On the Second Claim for Relief, for contribution under California

Health & Safety Code § 25363(d);

3. On the Third and Fourth Claims for Relief, for actual damages in an amount to be proven at trial, resulting from contamination at or emanating from the sewer line and Manley Street, including, without limitation, the expenses of investigating and remediating such contamination; liabilities to third parties, including the applicable governmental agencies, arising from said contamination; diminution in property value; and other monetary damages;

4. On the Third and Fourth Claims for Relief, for injunctive relief;

5. On the Fifth, Sixth, and Seventh Claims for Relief, for a declaration and an order retaining jurisdiction to effectuate a declaration that Defendants are liable for costs incurred to respond to the release and threatened release of hazardous substances at or emanating from Manley Street;

6. For attorneys' fees and costs of suit herein incurred as permitted by California Code of Civil Procedure Section 1021.5 or as otherwise provided by law; and

7. For such other and further relief as the Court may deem just and proper.

DATED: June 17, 2021                    Respectfully submitted,

                                                EDGCOMB LAW GROUP, LLP

                                                By: /s/Tiffany R. Hedgpeth
                                                Tiffany R. Hedgpeth
                                                thedgpeth@edgcomb-law.com
                                                Attorneys for Plaintiffs
                                                Trustees of the Cannon Family Trust
                                                and Modaffari Family Trust